

**SIGNED this 10th day of December, 2021**

*/s/ Shelley D. Rucker*
Shelley D. Rucker
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT FOR
# THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Donnie Ray Lowe,** | ) | No. 1:21-bk-11051-SDR |
| | ) | Chapter 7 |
| **Debtor;** | ) | |
| | ) | |
| **Jerrold D. Farinash,** *Trustee***,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Adv. No. 1:21-ap-01023-SDR |
| | ) | |
| **Jeanine L. Hardin,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANUM OPINION

### I. INTRODUCTION

Defendant Jeanine Hardin[1] ("Hardin") bought a house in 2019 when she was married to

Donnie Ray Lowe ("Lowe"), the debtor in Main Case No. 1:21-bk-11051-SDR. When Lowe and

---

[1] Defendant clarified at oral argument that, as ordered in her final divorce decree (Doc. No. 5-1 at 2), she has restored her maiden name of Jeanine Louise Hardin. The Court will refer to defendant accordingly and will direct the Clerk of the Court to update the CM/ECF docket.

Hardin divorced about a year later, a marital dissolution agreement required Lowe to deliver a quitclaim deed to Hardin that would make Hardin the sole owner of the house. A dispute exists over whether Lowe delivered the deed, but there is no dispute that there is no recorded document that transfers Lowe's interest to Hardin. Consequently, when Lowe filed for bankruptcy under Chapter 7, the Trustee concluded that Lowe's interest in the house became property of the bankruptcy estate and could be sold. The Trustee commenced this adversary proceeding to confirm the estate's interest in the house through 11 U.S.C. § 544(a)(1) and to obtain authorization to sell the house, including Hardin's interest, under 11 U.S.C. § 363(h).

The parties currently have two motions pending. Hardin filed a motion to join Lowe as a defendant. (Doc. No. 9.) Hardin asserted that Lowe's appearance in this adversary proceeding would avoid upsetting the balance of financial obligations and asset distribution that she and Lowe reached in their marital dissolution agreement. The Trustee countered that any sale under Section 363(h) can be adjudicated without Lowe's presence and that any other financial disputes between Hardin and Lowe are irrelevant to this adversary proceeding. Meanwhile, the Trustee filed a motion for judgment on the pleadings. (Doc. No. 10.) The Trustee asserted that Hardin did not deny two key facts in her answer: 1) the marital dissolution agreement never was recorded; and 2) Lowe never conveyed his interest in the house in any way that would keep the house out of the bankruptcy estate. In opposing the Trustee's motion, Hardin did not challenge the key facts that the Trustee highlighted but focused on the detriment that she would suffer under a Section 363(h) sale if she had to leave the house where she lives.

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (H), and (N), and the

parties have consented to final judgment. The Court held oral argument on October 28, 2021. For the reasons stated below, the Court will deny Hardin's motion for joinder and will grant the Trustee's motion in part.

## II.   BACKGROUND[2]

### A. *The Marital Dissolution Agreement and Final Divorce Decree*

The Trustee contends that he may sell the house where Hardin lives because Lowe's bankruptcy estate has an interest in it. The Trustee's allegations stem from the parties' failure to record the transfer contemplated in the marital dissolution agreement. Lowe and Hardin married on July 8, 2016, in Bradley County, Tennessee. (Doc. No. 5-1 at 3.) On February 25, 2019, Lowe and Hardin purchased a house for $208,000 at 207 Turning Leaf Trail NE in Cleveland, Tennessee (the "Residence"). (Doc. No. 1 at 5–7.) On March 12, 2020, Lowe and Hardin entered a marital dissolution agreement in Bradley County Chancery Court. (Doc. No. 5-1.) Among other provisions, Section 3.1 of the agreement set forth that the parties jointly owned the Residence. (*Id.* at 4.) Under Section 3.1, Hardin assumed responsibility for mortgage payments, insurance, taxes, and other costs associated with the Residence in exchange for Hardin's receipt of the Residence.

Lowe and Hardin under Section 3.1 also had the following obligations concerning the Residence that bear significantly on the pending motions:

> Wife will make reasonable efforts to refinance the home solely into her name within two (2) years of the execution of this agreement. In the event that Wife cannot refinance the home, Wife will place the home on the market to be sold, and upon the sale of the residence, Wife shall be entitled to all equity from the home. Husband has executed Quitclaim Deeds conveying his interest in and to the real property to Wife contemporaneously with the execution of this Agreement.

---

[2] For the sake of brevity and consistent with Civil Rule 12(c), the Court will avoid repeated use of the terms "alleged" and "allegedly." Nothing in this Background section constitutes a finding of fact unless otherwise noted.

3

(*Id.* at 4–5.) After the dissolution agreement was filed with the Chancery Court on May 14, 2020 and incorporated into the final decree of divorce on June 5, 2020, Hardin took steps to fulfill her obligations under Section 3.1. On June 21, 2021, Hardin refinanced the Residence in her own name and assumed responsibility for the monthly mortgage payments, obligations that have cost her over $60,000 to date. Due to Lowe's failure to uphold his obligation under the marital dissolution agreement to pay off joint credit-card obligations, Hardin had paid off those amounts and now has an indemnification claim in this estate. (*See* Doc. No. 15 at 2; Main Case Claim 3-1 at 2 n.2 (providing date of refinancing).)[3] Although she satisfied her obligations and more, Hardin never filed a quitclaim deed. At oral argument, the parties provided ambiguous information about the status of the quitclaim deed. The parties agreed that they have not seen any quitclaim deed but could not say for certain whether Lowe ever executed one. The Trustee suggested that, if Lowe did not execute a quitclaim deed prior to his bankruptcy filing then he likely did not do so after the filing. The Trustee advised Lowe that the Residence belongs to the estate and that any attempt to execute a quitclaim deed would have violated the automatic stay. Meanwhile, the marital dissolution agreement was filed with the Chancery Court but never was registered with the Bradley County Clerk's Office.

On September 23, 2020,[4] Hardin initiated contempt proceedings against Lowe in the Chancery Court based on Lowe's failure to abide by other provisions of the marital dissolution agreement concerning credit-card debts. (Main Case Claim 3-1 at 15–17.) The Chancery Court currently is holding the contempt proceedings in abeyance pending the outcome of bankruptcy

---

[3] At oral argument, the Trustee asserted that a consequence of Hardin's refinancing is that the Residence now is free and clear of any prior liens.
[4] Hardin's adversary pleading gives a date of September 23, 2021 (Doc. No. 5 at 2), but her proof of claim in the Main Case clarifies that September 23, 2020 was intended. (*See* Main Case Claim 3-1 at 2 n.2.)

4

proceedings. At oral argument, the parties explained that the Chancery Court stayed the contempt proceedings voluntarily, out of an abundance of caution given the pendency of the Main Case. The parties agreed that the automatic stay in the Main Case would not affect the contempt proceedings as long as those proceedings were limited to Lowe's post-petition assets and did not affect property of the bankruptcy estate.

### B. The Main Case and Adversary Proceeding Begin

Lowe filed his Chapter 7 voluntary petition on June 3, 2021. In Schedule A/B, Lowe did not disclose any legal or equitable interest in the Residence. (Main Case Doc. No. 1 at 17.) In Schedule C, Lowe claimed no exemptions for the Residence. (*Id.* at 23.) Nowhere in Schedules D and E/F, the statement of financial affairs, or the creditor matrix did Lowe make any mention of Hardin. Consequently, Hardin proceeded to refinance the Residence on June 21, 2021 without knowing that a bankruptcy case now would affect the ownership of the Residence. Hardin did not participate in the meeting of creditors on June 30, 2021 because she did not know about it. Hardin eventually learned about Lowe's bankruptcy in two ways: She was served with the adversary complaint on or around August 20, 2021 (Doc. No. 4); and the Chancery Court stayed the ongoing contempt proceedings. Once Hardin knew about Lowe's bankruptcy, she filed Claim 3 in the Main Case on September 22, 2021, asserting that Lowe owes her over $21,000 for credit-card debts that she had to pay when Lowe failed to abide by the provisions of the marital dissolution agreement that governed those debts.

The Trustee commenced this adversary proceeding by filing a complaint on August 19, 2021. (Doc. No. 1.) The Trustee learned that the marital dissolution agreement between Lowe and Hardin never was recorded and that Lowe never completed the process of executing, serving, and recording his quitclaim deed. Consequently, "[t]he Trustee avers that the Debtor still owns a

5

one half interest in the [Residence]. To the extent to that the unrecorded Marital Dissolution Agreement was a conveyance, the Trustee may avoid the transfer of the Debtor's interest pursuant 11 U.S.C. § 544(a)(1)." (*Id.* at 2.) If the Trustee can avoid any attempt that was made to transfer Lowe's interest in the Residence then, according to the Trustee, Lowe's interest in the Residence now belongs to the estate. The Trustee then invoked 11 U.S.C. § 363(h) to assert the right to sell the Residence as a whole, with Hardin's interests included:

> Under 11 U.S.C. §363(h) the Trustee may sell both the estate's interest and the interest of the Defendant because partition in kind is impracticable due to the size and nature of the property, the same being a house on a vacant lot. Sale of the estate's undivided interest alone would realize significantly less for the estate than a sale of the entire property due to the size and nature of the property, and it is unlikely that a sale of only the estate's interest could be accomplished. Because the co-owners would receive the value of the property in money there is no detriment to them, and such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas, for heat, light, or power.

(*Id.*) The complaint ended with three requests: to avoid any unrecorded transfer of Lowe's interest in the Residence under Section 544(a)(1); to sell the Residence under Section 363(h); and, as an alternative remedy to the first two requests, to be awarded a judgment in the amount of the value of Lowe's interest in the Residence. The Trustee consented to entry of final judgment by this Court.

Hardin filed her answer on September 9, 2021. Hardin consented to entry of final judgment. (*See* Doc. No. 5 at 1.) Most of the rest of the answer is a response to the Trustee's assertion that he may sell the Residence. Hardin explained how a sale of the Residence would exacerbate Lowe's unequal treatment of creditors:

> The Debtor, Donnie R. Lowe, failed to list known creditors contemplated by the parties in their marital dissolution agreement as non-dischargeable pursuant to 11 U.S.C. § 523 (a)(15) on his bankruptcy petition filed with this Court, specifically, Chase and Tennessee Valley Federal Credit Union. Further, Defendant, Jeanine L.

6

> Lowe, states that she was and is a known creditor to the Debtor, Donnie R. Lowe, because she made payments to known creditors when the Debtor, Donnie R. Lowe, failed to do so. Defendant, Jeanine L. Lowe filed a petition for contempt against Debtor, Donnie R. Lowe, with the state court on September 23, 2021, which had been set for hearing on January 22, 2021, and remained pending at the time the Debtor, Donnie R. Lowe, filed his bankruptcy petition on June 3, 2021, without notice to Defendant, Jeanine L. Lowe. Further, the Debtor, Donnie R. Lowe's failure to include these creditors, as well the Defendant, Jeanine L. Lowe, places those creditors in an unequitable position should the Court allow the Chapter 7 Trustee to sell the real property located at 207 Turning Leaf Trail, Cleveland, TN 37312.

(*Id.* at 2–3 ¶ 5.) Without explicitly citing Section 363(h), Hardin also asserted that a sale of the Residence would not satisfy the criteria for a sale under that section:

> Defendant, Jeanine L. Lowe, acknowledges the Chapter 7 Trustee's powers under the Bankruptcy Code but affirmatively states that there is no equity in the real property located at 207 Turning Leaf Trail, Cleveland, Tennessee, and any sale by the Chapter 7 Trustee of said real property would burden the Debtor's bankruptcy estate with unnecessary fees and expenses. Pursuant to the terms of the parties' marital dissolution agreement and without notice of the Debtor, Donnie R. Lowe's decision to file for Chapter 7 bankruptcy, Defendant, Jeanine L. Lowe, refinanced said real property on June 21, 2021 pursuant to the terms of the parties' marital dissolution agreement and the state court's order incorporating the terms of the marital dissolution agreement into the final decree of divorce and used a substantial portion of the equity to satisfy debts of the Debtor, Donnie R. Lowe. The detriment to the Defendant, Jeanine L. Lowe, from the sale of the real property located at 208 Turning Leaf Trail, Cleveland, Tennessee by the Chapter 7 Trustee, outweighs any benefit to the Debtor's bankruptcy estate.

(*Id.* at 3 ¶ 7.)

### C. *Motion for Joinder*

On September 20, 2021, Hardin filed the pending motion to join Lowe as a defendant in this adversary proceeding. The essence of the motion is that the marital dissolution agreement established Lowe and Hardin's rights and responsibilities regarding marital property and debts and that Lowe's absence would upset the arrangement:

> Not only did the Debtor, Donnie Ray Lowe, fail to notify these named unsecured creditors specifically named by the parties in their marital dissolution agreement of

7

> his Chapter 7 bankruptcy case, Defendant, Jeanine L. Lowe, was likewise not noticed despite a pending contempt petition in state court. These unsecured creditors specifically included in the parties' marital dissolution agreement but not listed on the Debtor, Donnie Ray Lowe's Schedule E/F in his Chapter 7 bankruptcy, may suffer adverse consequences if the parties' most significant asset is subject to sale by the Chapter 7 Trustee without the inclusion of those creditors. The Debtor, Donnie Ray Lowe's absence from these proceedings would lead to Defendant, Jeanine L. Lowe, incurring inconsistent obligations above and beyond what the parties agreed to concerning the division of their marital property and debt. Further, the Debtor, Donnie Ray Lowe, was to convey any interest he had in the property to Defendant Jeanine L. Lowe. Pursuant to the parties' marital dissolution agreement and without notice of the Debtor, Donnie Ray Lowe's Chapter 7 bankruptcy filing on June 3, 2021, Defendant, Jeanine L. Lowe refinanced the real property that the Chapter 7 Trustee seeks to sell using the proceeds to satisfy a majority of the debt owed by the Debtor, Donnie Ray Lowe.

(Doc. No. 9 at 4.) Hardin seeks either mandatory joinder of Lowe under Civil Rule 19, made applicable by Bankruptcy Rule 7019; or permissive joinder of Lowe under Civil Rule 20, made applicable by Bankruptcy Rule 7020.

The Trustee opposes joinder of Lowe. Because the argument for joinder rests entirely on the relationship between Lowe and Hardin established in the marital dissolution agreement, the Trustee asserts "that the disputes between the Defendant and the Debtor are unrelated to the Debtor's bankruptcy." (Doc. No. 11 at 1–2.) Instead, the Trustee asserts that joining Lowe "is not proper or necessary in that the issue between the Trustee and the Defendant set forth in the adversary proceeding can be fully adjudicated without the Debtor." (*Id.* at 2.) As the Trustee explained at oral argument, if the marital dissolution agreement failed to change Lowe's interest in the Residence because it was not recorded then the Trustee now stands in Lowe's place and can assume Lowe's interest in the residence on behalf of the bankruptcy estate.

At oral argument, Hardin conceded that Lowe would not be a necessary party; at most, he would be a permissible party. (Ct. Digit. Audio Oct. 28, 2021 at 11:18:20.) Hardin clarified that her motivation for joinder was frustration that she cannot pursue her contempt proceedings against

8

Lowe in state court because of the automatic stay. The Trustee responded in two ways. First, the Trustee noted that the automatic stay does not apply to the contempt proceedings to the extent that the state case implicates only post-petition assets of Lowe. Second, the Trustee indicated that he would be amenable to either an order from the Court or an agreed order that lifted the automatic stay to allow the contempt proceedings to continue without infringing on property of the estate.

### D.  *Motion for Judgment on the Pleadings*

The Trustee filed the pending motion for judgment on the pleadings on September 22, 2021. The motion rests on two assertions that the Trustee made in his complaint that Hardin did not deny in her answer. In paragraph 5 of the answer, quoted above, Hardin did not deny that the marital dissolution agreement never was recorded. (Doc. No. 10 at 2.) Additionally, in paragraph 7 of the answer, also quoted above, Hardin did not deny that the Trustee has the authority to sell both Lowe's and Hardin's interests in the Residence. (*Id.*) Hardin opposes the motion in three ways. First, Hardin reiterates that she did not know about Lowe's bankruptcy filing until after the meeting of creditors, meaning that she "did not have the opportunity to ask the Debtor questions, under oath, before the trustee about the Debtor's assets or income." (Doc. No. 12 at 2.) Implied in this first argument is a principle that Hardin first stated in paragraph 5 of her answer: that, under the circumstances of inadequate notice to creditors, a sale of the Residence would lead to unequal treatment of creditors. Second, Hardin asserts that Lowe "only has bare legal title" (*id.*) to the Residence because the Residence is a joint-tenancy property. Hardin emphasizes that Lowe would have included the Residence in his schedules and exemptions if he retained any ownership interest:

> The Defendant states that the Debtor does not have an interest in the real property pursuant to the marital dissolution agreement incorporated into the parties' final divorce decree. This contention is consistent with the Debtor's schedules in his bankruptcy case. No schedule filed by the Debtor in Bankruptcy Case No. 1-21-bk-11951-SDR lists 207 Turning Leaf Trail, Cleveland, Tennessee 37312 as real

9

> property the Debtor has an interest in nor does the Debtor state on his schedules that he holds property for another. Statement of Financial Affairs, question 14 [Bankruptcy Case 1:21-bk-11951-SDR; Doc. 27-1]. Further, the Debtor did not seek an exemption for 207 Turning Leaf Trail, Cleveland, Tennessee 37312 in his Schedule C nor did the Debtor list a lienholder for the real property on his Schedule D. [Bankruptcy Case 1:21-bk-11951-SDR; Doc. 1; Doc. 27-1] The Defendant asserts that any interest that the Debtor might have in the real property, the Defendant holds in constructive trust pursuant to the parties' marital dissolution agreement incorporated into their final decree of divorce entered by the divorce court on June 5, 2021.

(*Id.* at 2–3.) Third, Hardin argues under Section 363(h)(3) that any benefit to the estate would be outweighed by a detriment to her that likely would leave her homeless:

> Because the Defendant refinanced on June 23, 2021 due to the lack of notice of the Debtor's bankruptcy filing on June 3, 2021, the Defendant would not be able to obtain financing to enable her to exercise her right of first refusal under §363(i). There are no assurances that the sale share to the Defendant would be enough to purchase a new home if Plaintiff is allowed to sell the real property. The Defendant would lose a good portion of the contributions and payments that she made toward acquisition, maintenance and retention of the real property. *See In re Gauthreaux*, 206 B.R. 502 (Bankr. N.D. Ill. 1997). Compensation in this instance is not a substitute for the assurance of having a roof over one's head. *See In re Trout*, 146 B.R. 823 (Bankr. D. N.D. 1992).

(*Id.* at 5.)

### III. DISCUSSION

#### A. *Motion for Joinder*

The Court will begin by reviewing Hardin's motion for joinder. Whether Lowe is a necessary party affects the Trustee's motion and whether he may proceed with the sale of the Residence without Lowe's input.

Under Civil Rule 19(a)(1)(A), made applicable through Bankruptcy Rule 7019, Lowe would be a necessary party if, in his absence, "the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). "Completeness is determined on the basis of those persons who are already parties, and not as between a party and the absent person whose joinder

10

is sought." *Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 265 (6th Cir. 2009) (internal quotation marks and citations omitted). "Even if future litigation involving an absent party is inevitable if plaintiff prevails in this lawsuit, Rule 19(a)(1)(A) only looks to those who are already parties." *We Project, Inc. v. Relavistic, LLC*, No. 1:20-CV-2873, 2021 WL 1986672, at *1 (N.D. Ohio May 3, 2021) (internal quotation marks and citation omitted). Here, Lowe's presence as a named party is potentially relevant to only one aspect of the Trustee's motion—whether Lowe successfully transferred his interest in the Residence to Hardin through the marital dissolution agreement. The Court will address the transfer in more detail below, but the analysis of the issue has only two possible outcomes. One possible outcome is that Lowe did transfer his interest in a way that the Trustee cannot undo, which would mean that Hardin holds the Residence in fee simple absolute. The other possible outcome is that Lowe's transfer was either ineffective or avoidable, which would mean that Lowe's interest in the Residence belongs to the estate. *Cf. In re Silverman*, 603 B.R. 498, 502 (Bankr. D.N.M. 2019) ("Case law makes clear that the transferor is not a necessary party to an avoidance action brought against the transferee if the transferor did not retain any interest in the transferred property."); *In re Hopkins*, 494 B.R. 306, 314 (Bankr. E.D. Tenn. 2013) (transferor who retained no interest in the transferred property is not a necessary party). With either outcome, Lowe might have important information to provide as a witness during discovery, but his absence as a named party will not prevent the existing parties from litigating the issues fully and will not prevent the Court from ultimately deciding whether the Residence may be sold. The Court draws additional support for its conclusion from its inability to assess Hardin's motion under Civil Rule 19(a)(1)(B). As an alternative to finding that it cannot accord complete relief among existing parties, the Court could

11

join Lowe as a party if Lowe himself claimed an interest relating to the subject of this adversary proceeding. Fed. R. Civ. P. 19(a)(1)(B). Lowe so far has claimed no interest here. Under these circumstances, Lowe's presence in this adversary proceeding is not required. The Court credits Hardin with acknowledging at oral argument that Lowe is not a necessary party.

For the same reasons described above, the Court declines to add Lowe as a party through permissive joinder. As a secondary argument for joinder, Hardin argues that Lowe "should, at the Court's discretion, be joined as a defendant, pursuant to Rule 7020, in the present case as all questions of law and fact in this case apply equally to all defendants, and any potential right to relief can be asserted against both and arose from the same occurrence and transactions." (Doc. No. 9 at 4.) Civil Rule 20, made applicable through Bankruptcy Rule 7020, would permit joinder of Lowe if "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(B). As the Court noted above, there is no scenario in this adversary proceeding in which Lowe still would have an interest in the Residence that the Trustee could not avoid. Hardin either is the sole owner of the Residence or shares ownership with the bankruptcy estate. At most, Lowe's testimony might be relevant to assessing detriment to Harden under Section 363(h). To the extent that Hardin has suggested that a sale of the Residence would upset the financial arrangements that she and Lowe reached in the marital dissolution agreement, that issue folds into the Section 363(h) analysis and is not an independent issue before the Court.

For the above reasons, the Court denies Hardin's motion for joinder. This denial is without prejudice to renew if the parties uncover new information during discovery that indicates that Lowe ought to be joined as a defendant. As an alternative to granting the motion, the Court will give the parties 14 days from entry of the order accompanying this Memorandum Opinion to

request entry of an agreed order that would lift the automatic stay to permit the contempt proceedings to resume in state court.

### B. *Motion for Judgment on the Pleadings*
#### i. *Standard of Review*

The Court next will assess the Trustee's motion for judgment on the pleadings. "In assessing the pleadings, we take as true all well-pleaded material allegations. The motion for judgment on the pleadings is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Bickley v. Dish Network, LLC*, 751 F.3d 724, 733 (6th Cir. 2014) (internal quotation marks and citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

The Court also has to review the principles governing the documents that the parties have filed so far in the record. "In addition to the allegations in the complaint, the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) (citations omitted).[5] "While documents integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, it must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 797 (6th Cir. 2012) (internal quotation marks and citation omitted). Applying these principles, the Court has considered several documents in the

---

[5] The Court has cited to cases addressing Civil Rule 12(b)(6) motions because the legal standards governing motions under either Civil Rule 12(b)(6) or 12(c) are the same for the purposes here. *See Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987) (citations omitted).

record. The Trustee attached to his complaint a copy of the warranty deed that confirms that Lowe and Hardin purchased the Residence jointly. (Doc. No. 1 at 5–7.) Hardin does not dispute the accuracy of the copy of the warranty deed. (Doc. No. 5 at 2 ¶ 4.) The Court thus has considered the warranty deed for the limited purpose of establishing background information concerning the Residence. The Trustee did not attach a copy of the marital dissolution agreement to the complaint, but Hardin attached it to her answer (Doc. No. 5-1 at 3–11), and the entire complaint depends on the legal significance of the agreement's terms. Since the marital dissolution agreement is integral to the complaint, the Court has considered that document as well. Finally, the Court has considered the final decree of divorce that Lowe and Hardin entered on June 5, 2020 (Doc. No. 5-1 at 1–2) for background purposes because it incorporates the marital dissolution agreement by reference. In contrast, the Court has considered an affirmation (Doc. No. 15) that Hardin submitted in opposition to the Trustee's motion only to the extent that it provides undisputed background details to points raised in her answer. The Court has disregarded the affirmation to the extent that it provides new evidentiary information, especially with respect to any hardship that Hardin would suffer if the Trustee sold the Residence. *Cf., e.g., McKee Foods Corp. v. Pitney Bowes, Inc.*, No. 1:06-CV-80, 2007 WL 896153, at *1 (E.D. Tenn. Mar. 22, 2007) (disregarding affidavits submitted in opposition to a motion to dismiss). The Court has disregarded exhibits attached to the affirmation (Doc. Nos. 15-1, 15-2) for the same reason.

        ii.    *The Marital Dissolution Agreement*

To assess the substance of the Trustee's motion, the Court turns to the marital dissolution agreement, which is the linchpin of the entire motion. Of the issues to be considered with respect to the marital dissolution agreement, the issue that draws the Court's immediate attention is the registration of the document. The parties do not dispute that the marital dissolution agreement was

filed with the Bradley County Chancery Court, in the ordinary course of that court's adjudication of the divorce case, but never was registered with the Register's Office of Bradley County. The lack of registration is significant because the marital dissolution agreement contains a conveyance of real property—Lowe would transfer his interest in the Residence to Hardin, who then would be sole owner. Marital dissolution agreements that change real property rights are eligible for registration. Tenn. Code Ann. § 66-24-101(a)(8, 10, 19), *cited in In re Wilson*, No. 09-32775, 2010 WL 56080, at *3 (Bankr. E.D. Tenn. Jan. 5, 2010) ("In Tennessee, mortgages and deeds of trust, marital dissolution agreements, and final divorce decrees are among those documents eligible by statute for recording."). In contrast, "unregistered documents are not the equivalent of registered deeds and are therefore ineffectual as against creditors. Likewise, a divorce decree must be registered to be effective as a conveyance of real property against creditors and bona fide purchasers of the property." *Wilson*, 2010 WL 56080, at *3 (*citing In re Kelley*, 304 B.R. 331, 336–37 (Bankr. E.D. Tenn. 2003); internal quotation marks and other citations omitted); *see also* Tenn. Code Ann. § 66-26-103 ("Any instruments not so registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice."). Another state statute declares that "[a] judgment or decree shall not bind the equitable interest of the debtor in real estate or other property until a memorandum or abstract of the judgment or decree, stating the amount and date thereof, with the names of the parties is certified by the clerk and registered in the register's office of the county where the real estate is situated." Tenn. Code Ann. § 25-5-102, *cited in In re Hilliard*, No. 11-13347, 2012 WL 1067691, at *4 (Bankr. E.D. Tenn. Mar. 12, 2012) ("If the third party fails to record his interest, the

15

bankruptcy courts will not impose a constructive [trust] on the debtor's interest because of the bankruptcy policy of ensuring equitable distribution.") (other citation omitted).

The above statutes and cases mean that, because no one ever registered the marital dissolution agreement, the joint tenancy in the Residence created by the registered warranty deed was never disturbed. Lowe's interest in the Residence thus became part of the bankruptcy estate upon the filing of his petition, and the interest now is the Trustee's subject to any liens imposed on the recovery by 11 U.S.C. § 550. *See In re Thomas*, No. 17-25100-L, 2018 WL 10731606, at *4 (Bankr. W.D. Tenn. Sept. 27, 2018) ("When one, but not both, spouse files a petition in bankruptcy, the debtor's interests in tenancy by the entirety property nevertheless become property of the bankruptcy estate."). The state cases that Hardin has cited do not change the Court's conclusion because the principal issue in each case was not the registration of a marital dissolution agreement that conveyed real property. *See Holt v. Holt*, 995 S.W.2d 68, 77 (Tenn. 1999) (son's vested interest in father's life insurance policy per divorce decree); *Long v. McAllister-Long*, 221 S.W.3d 1, 12 (Tenn. Ct. App. 2006) (husband's obligation to make mortgage and car payments per marital dissolution agreement); *Pylant v. Spivey*, 174 S.W.3d 143, 155 (Tenn. Ct. App. 2003) (father's contractual obligation to pay for daughter's college education).

### iii.   Sale of the Residence under 11 U.S.C. § 363(h)

Confirming that the Trustee has an interest in the Residence by itself does not mean that the Trustee should prevail in his pending motion. The Trustee still has to satisfy the criteria of 11 U.S.C. § 363(h). Under Section 363(h), the Trustee may sell the Residence, including Hardin's interest in it, if and only if he can satisfy four criteria:

(1) partition in kind of such property among the estate and such co-owners is impracticable;

16

> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and
>
> (4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

11 U.S.C. § 363(h). Hardin has focused her opposition to a sale on the third element, which, if not met, will prevent the sale. With respect to the third element, and as the Court has quoted above, Hardin emphasizes how a sale would upset the balance of assets that she and Lowe established through the marital dissolution agreement. Under the agreement, Hardin was permitted to become sole owner of the Residence, subject to refinancing and assumption of debts and other obligations connected to the property. Lowe, in exchange, was permitted to maintain ownership of two businesses and all the associated business assets. The balance that Hardin and Lowe reached in the marital dissolution agreement did not contemplate a bankruptcy, meaning that Hardin never contemplated a scenario in which she would have to refinance twice—once to fulfill her obligations under the agreement, and then once to keep the Residence in the face of a Section 363(h) sale. Hardin argues that she finds herself in that scenario now. Because Lowe did not give her timely notice of his bankruptcy filing, Hardin refinanced the Residence under the marital dissolution agreement about three weeks after Lowe filed his petition. Hardin is aware that she has the right of first refusal for any sale of the Residence under Section 363(i), but she asserts that she would not be able to obtain additional financing that would allow her to invoke her rights under that section. (Doc. No. 12 at 4–5.) As a result, according to Hardin, a sale of the Residence could hurt her in multiple ways: She would have to find a new place to live to avoid homelessness; she would lose a good portion of payments that she made to keep the Residence; and she might have

17

to file her own bankruptcy petition if she faces sufficiently severe financial consequences. All of these hardships would hurt Hardin while Lowe maintained ownership of his two businesses.

To his credit, the Trustee conceded at oral argument that Hardin raised, in her answer, enough of an issue of fact about the third element that judgment on the pleadings would be inappropriate for that issue. (Ct. Digit. Audio Oct. 28, 2021 at 10:50:15.)

The third element of Section 363(h) requires assessing the balance of competing interests:

> The third element of § 363(h) requires the Trustee to show that the benefit to the estate in selling the property outweighs the detriment to the co-owners. Detriment has been defined as economic hardship, as well as any loss, harm, injury or prejudice resulting from the involuntary displacement. A court may also consider the emotional detriment that the co-owners may face if a sale were to occur. For the estate, the primary concern is whether a significant dividend will be realized. Thus, if the trustee would receive little or no money from a sale due to liens or other encumbrances on the property, then the minimal benefit to the estate may be outweighed by the detriment to the co-owners.

*In re Ziegler*, 396 B.R. 1, 4 (Bankr. N.D. Ohio 2008) (internal quotation marks and citations omitted). Numerous factors can contribute to economic harm that can occur to survivorship and present possessory interests of a co-owner:

> In weighing detriment to the non-debtor spouses a number of variables must be considered when valuing their survivorship interests as well as their present possessory interests: for example, actuarial calculations of the life expectancies of the spouses, respective contributions to the purchase price of the home, tax exemptions available on the property, prospects for acquiring a new home, special physical or mental handicaps, and minor children living at home.

*In re Persky*, 893 F.2d 15, 21 (2d Cir. 1989) (citation omitted). Here, Hardin pled in her answer that she refinanced the Residence without knowing about Lowe's bankruptcy filing, which supports the arguments in her motion papers that she will not be able to obtain additional financing to keep the Residence if the Trustee proceeds with a sale. Hardin pled further that the marital dissolution agreement created a balance of assets that would be upset without any recourse if the

18

Trustee can proceed to sell the Residence and she cannot continue her contempt proceedings in state court. *Cf. In re Harlin*, 325 B.R. 184, 191 (Bankr. E.D. Mich. 2005) ("Mrs. Harlin is not the Debtor. With the exception of the $ 3,500 property tax obligation, the debts the Trustee seeks to pay with the proceeds from the sale of the marital residence are not Mrs. Harlin's debts. Debtor and Mrs. Harlin owned the marital residence as tenants by the entireties for years prior to the filing of Debtor's bankruptcy. The detriment imposed on Mrs. Harlin by forcing her out of her home to pay her husband's business debts far outweighs any benefit to the estate."). Coupled with the Trustee's concession at oral argument, Hardin has done enough at this very early stage to raise factual issues about her detriment that should be explored further during discovery. Judgment on the pleadings for the third element of Section 363(h) thus would be inappropriate.

## IV. CONCLUSION

For all of the foregoing reasons, the Court will decide the pending motions as follows:

1) The Court will deny Hardin's motion for joinder without prejudice. (Doc. No. 9.)

2) The Court will grant the Trustee's motion for judgment on the pleadings (Doc. No. 10) in part. Hardin's interest in the Residence may be avoided by the Trustee under 11 U.S.C. § 544(a)(1). The value of the recovery for the estate is still subject to any liens for improvements that Hardin made. *See* 11 U.S.C. § 550(e). The remainder of the relief requested in the motion will be denied based on Hardin's showing that there is a question of fact to be resolved with respect to the balance of benefit versus detriment in the third element of Section 363(h); and to the extent that the motion seeks any relief not otherwise described in this Memorandum Opinion.

3) The parties will have 14 days from entry of the accompanying order to request entry of an agreed order that would lift the automatic stay to permit the contempt proceedings to resume in Case No. 2019-CV-373 in Bradley County Chancery Court.

A separate order will follow.

# # #